UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

DONNA JOHNSON,                          )
                                        )
            Plaintiff,                  )
                                        )       No. 1:12-CV-394
v.                                      )
                                        )       Judge Curtis L. Collier
WICHITA COUNTY, TEXAS SHERIFF'S         )
OFFICE, *et al.*                        )
                                        )
            Defendant.                  )

# M E M O R A N D U M

Before the Court is a motion to dismiss for lack of personal jurisdiction filed by Defendants

Wichita County, Texas Sheriff's Office ("WCSO"), David Duke, and Alan Boyd (collectively,

"Defendants") (Court File No. 35). Plaintiff Donna Johnson ("Plaintiff") did not respond to

Defendants' motion, but previously responded to Defendants' earlier, similar motion to dismiss

(Court File No. 16). The Court assumes Plaintiff did not respond to Defendants' motion because

she was anticipating a ruling on her motion for default judgment (Court File No. 33), which the

Court denies in a separate order, and because she relies on her previous response. For the following

reasons, the Court will **DENY** Defendants' motion (Court File No. 35).

## I.      FACTUAL AND PROCEDURAL BACKGROUND

The following recitation of the facts comes from the amended complaint. Plaintiff was a

professional photographer for over twenty years. She specialized in photographing law enforcement

and military personnel through her own photography companies called "U.S. Legacy, Inc." and

"Cherokee Studies," both of which were headquartered in Plaintiff's home state of Tennessee. In

2010 and 2011, Plaintiff was hired by multiple New York law enforcement agencies, primarily

located in the western part of the State. Naser Zenelovic, co-defendant in this action but not party

to the instant motion, communicated with Plaintiff on behalf of Rochester Police Department, also co-defendant to this action, for professional photography services. After she finished photographing these New York law enforcement agencies, including Rochester Police Department, she returned to Tennessee for surgery in March 2011. Following her recovery, she began production of the photographs she took in New York.

In spring 2011, Plaintiff shut down U.S. Legacy, Inc. and declined further employment solicitations. She decided she would complete the New York projects and then cease operating U.S. Legacy, Inc. altogether. She continued to communicate with the New York entities during this time period. Plaintiff also "revived" a prior company known as Cherokee Studies, which she owned and operated. Under this business name, she attended the Texas Sheriff's Conference as a vendor. She received solicitations from a number of Texas law enforcement agencies for work during the summer of 2011. One such agency was WCSO, which contacted Plaintiff through Sheriff David Duke in July 2011. Plaintiff photographed WCSO officers in late July at WCSO's Texas headquarters. A number of WCSO officers placed orders for individual portrait packages, and Plaintiff advised each how long production of such packages would require. She advised the WCSO customers she would be returning to Tennessee to begin producing the photographs.

After completing the session, Plaintiff began her return trip to Tennessee. Over the next several weeks, Plaintiff continued production of the New York photographs and began production for the Texas customers, including WCSO. She remained in communication with many of her customers, including Rochester Police Department. In September 2011, she decided to close down Cherokee Studios, but continued to produce the outstanding orders. She obtained employment through a staffing company to cover additional expenses and maintained contact with Rochester

2

Police Department and WCSO, through Zenelovic and Duke respectively. She continued working on the outstanding projects through the fall and into November 2011.

During this time period, Rochester Police Department, through Zenelovic, began contacting other customers of Plaintiff, including WCSO. During these communications, Zenelovic accused Plaintiff of engaging in criminal activity. Zenelovic and WCSO, through Defendants Duke and Boyd, agreed to "illegally swear out and have issued a criminal complaint" in Texas for Plaintiff's arrest and to seize her photography equipment in Tennessee. This criminal complaint was "sworn out" by Defendant Boyd. During these communications, both Rochester Police Department and WCSO were advised by other agencies Plaintiff had provided their photographs and been in communication with them. Other Texas agencies were contacted by either WCSO or Rochester Police Department, but refused to join Defendants in seeking the Texas warrant for Plaintiff's arrest and extradition to Texas.

On November 30, 2011, Plaintiff's employer was contacted by a detective from Hamilton County, Tennessee's Sheriff's Office, inquiring as to her whereabouts. Later that day, she learned a fugitive warrant had been issued in Tennessee based on the Texas complaint sent from Wichita County, Texas. She was later arrested and Tennessee law enforcement executed a search and seizure in connection with the warrant, seizing Plaintiff's photography equipment. On the way to Hamilton County jail, the arresting Tennessee officer contacted Defendant Boyd and advised him Plaintiff had been arrested. Plaintiff alleges Duke and Boyd engaged in a number of communications with Tennessee authorities in order to execute the fugitive warrant and to have Plaintiff extradited and her photography equipment seized.

After she was processed in county jail, she was transferred to Silverdale, a facility operated

3

by Defendant Corrections Corporation of America ("CCA"). Plaintiff was verbally abused during her stay at Silverdale, and threatened with sexual assault for committing an offense against a law enforcement agency. She suffered a "medical episode" while at Silverdale that required she be evaluated by medical personnel. She was transported to the emergency room six hours after being examined by Silverdale staff. During transit, CCA officers "hogtied" Plaintiff. In this position, CCA officers violently shoved Plaintiff into the van, causing her to strike a metal bar inside the vehicle. They struck her repeatedly with their fists and hands, kicking her in her genitalia, causing internal injuries, and violently pushing and shoving her while in the van resulting in more contact with the rail. She was left with bruises, contusions, a dent in her skull, and she lost a number of teeth which required oral surgery. She was also threatened repeatedly by these officers, including while in treatment at the emergency room.

The next day, December 1, 2011, Plaintiff appeared in General Sessions Court for a hearing on the fugitive warrant. The court granted bail, and passed the hearing for two weeks until the regularly scheduled date for fugitive warrants. As she was transferred back to Silverdale for processing, she was subjected to more verbal abuse and threats. After passing the hearing again, the General Sessions Court finally dismissed the fugitive warrant on January 18, 2012. The photography equipment had already been shipped to WCSO, where employees attempted to break into her equipment. Plaintiff's equipment is encrypted and proprietary and Defendants' attempts to usurp those protections compromised its security. WCSO did not return the equipment until January 2012. On February 8, 2012, the criminal complaint in Texas was dropped and any case against her was dismissed with prejudice.

Plaintiff alleges Duke, Boyd, Zenelovic, WCSO, and the Rochester Police Department acted

4

in concert to illegally obtain a criminal complaint against Plaintiff and to submit that complaint to Tennessee for her unlawful arrest and seizure of her photography equipment. Plaintiff asserts a number of claims against Defendants, including a deprivation of rights pursuant to 42 U.S.C. § 1983, conspiracy to violate her civil rights pursuant to 42 U.S.C. § 1985, intentional infliction of emotional distress, malicious prosecution, abuse of process, false arrest, false imprisonment, tortious interference with a business relationship, conversion, breach of the implied covenant of good faith and fair dealing, and conspiracy to commit many of these state law claims.

Plaintiff originally filed this action on November 29, 2012 against Defendants as well as CCA. After stipulating to an extension of time for Defendants' to respond to the complaint, Defendants filed a motion to dismiss for lack of personal jurisdiction (Court File No. 12). Plaintiff responded in opposition (Court File No. 16). Both this case and another case, No. 1:12-CV-429, came before the Court simultaneously for scheduling conferences. During these conferences, the parties agreed the cases contained similar parties and causes of action. Plaintiff then filed a motion to consolidate the cases (Court File No. 21) and a motion to amend her complaint (Court File No. 18). After her motion to amend was granted (Court File No. 22), Plaintiff filed an amended complaint that added two more defendants (Court File No. 23). Because "[c]ourts in this Circuit and others will deny Rule 12 motions as moot after a plaintiff subsequently files an amended complaint," *Wright v. Memphis Light, Gas & Water Div.*, No. 11-3071-STA-tmp, 2012 WL 3683484, at *3 (W.D. Tenn. Aug. 24, 2012), the Court denied Defendants' motion to dismiss as moot with leave to refile the motion in regard to Plaintiff's amended complaint (Court File No. 30). Defendants failed to do so within twenty-one days. Plaintiff moved for default judgment (Court File No. 33), to which Defendants responded (Court File No. 34). Defendants then refiled the instant motion

5

(Court File No. 35) and filed an answer in an abundance of caution (Court File No. 36). The Court

subsequently denies Plaintiff's motion for default judgment in a separate order.

## II.    DISCUSSION

### A.    Waiver

The Court must first determine whether Defendants have waived their personal jurisdiction

defense by filing an alternative answer explicitly subject to their motion to dismiss for lack of

personal jurisdiction. As stated in the Court's order denying Plaintiff's motion for default judgment,

Defendants initially filed a motion to dismiss Plaintiff's original complaint. After Plaintiff amended

her complaint, the Court denied Defendants' motion as moot with leave to refile the motion with

respect to Plaintiff's amended complaint. Defense counsel apparently was not aware of the Court's

order due to technical difficulties, and after Defendants failed to respond to Plaintiff's complaint

within twenty-one days of the Court's order, Plaintiff filed a motion for default judgment. Defense

counsel promptly responded, moving that any default be set aside. Defendants also refiled the

instant motion and, in an abundance of caution, filed an answer explicitly subject to, and reserving

all rights in, this motion to dismiss for lack of personal jurisdiction. Defendants conceded the

answer could constitute a waiver, but apparently decided the risk of default outweighed the risk of

waiver. The Court denies Plaintiff's motion for default judgment in a separate order.

The Court holds Defendants did not waive their personal jurisdiction defense. To determine

whether Defendants have waived their personal jurisdiction defense, the Court "must determine

whether any of Defendants' appearances and filings . . . constitute[] 'legal submission to the

jurisdiction of the [C]ourt.'" *Gerber v. Riordan*, 649 F.3d 514, 519 (6th Cir. 2011) (quoting *Days

Inns Worldwide, Inc. v. Patel*, 445 F.3d 899, 905 (6th Cir. 2006).

6

> [W]hile "the voluntary use of certain [district] court procedures" serve as "constructive consent to the personal jurisdiction of the [district] court," [*Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 703, 704 (1982)], not all do. *See Mobile Anesthesiologists Chicago, LLC v. Anesthesia Associates of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010). Only those submissions, appearances and filings that give "[P]laintiff a reasonable expectation that [Defendants] will defend the suit on the merits or must cause the court to go to some effort that would be wasted if personal jurisdiction is later found lacking," *id.* at 443, result in waiver of a personal jurisdiction defense.

*Gerber*, 649 F.3d at 519; *see also King v. Taylor*, 694 F.3d 650, 659 (6th Cir. 2012) ("We recently clarified the test for finding forfeiture of a personal-jurisdiction defense through conduct: we ask whether a defendant's conduct prior to raising the defense has given the plaintiff 'a reasonable expectation' that the defendant will defend the suit on the merits or whether the defendant has caused the court to 'go to some effort that would be wasted if personal jurisdiction is later found lacking.'") (quoting *Gerber*, 649 F.3d at 519).

In *Gerber*, the defendants, as did Defendants here, filed a motion to dismiss the complaint for lack of jurisdiction. 649 F.3d at 516. However, because one of the defendants was a corporate entity, the district court directed the defendants to show cause why default judgment should not be entered against them for failure to obtain an attorney to represent the corporation. *Id.* The district court subsequently entered default judgment and denied the motion to dismiss for reasons unrelated to the merits. The defendants then retained an attorney who entered a general appearance on their behalf, moved to stay litigation pending arbitration, and moved to vacate the default judgment entered against them. *Id.* Defense counsel later appeared at a case management conference and consented to the magistrate judge's jurisdiction for all purposes, including entry of judgment. After the case management conference, Defendants filed Rule 26 disclosures and attended a pretrial conference. The court stayed the action pending mediation. *Id.* at 516-17. Defendants then refiled

7

their motion to dismiss for lack of personal jurisdiction, which the district court granted. *Id.* at 517.

After stating the above-quoted standard for waiver of the personal jurisdiction defense, the court acknowledged "[t]here is a dearth of caselaw both in [the Sixth] Circuit, and in our sister circuits, defining precisely what types of appearances and filings qualify as 'a [defendant's] legal submission to the jurisdiction of the court, and give a 'plaintiff a reasonable expectation that it will defend the suit on the merits.'" *Id.* at 519 (citations omitted). The court then "t[ook] th[e] opportunity to discuss some of the contours of this area of law" in regard to the case at hand.

Specifically, the court held the defendants did not "accede to the district court's jurisdiction in moving to stay the litigation pending arbitration" because the motion to stay "signals only that a defendant wishes to postpone the court's disposition of a case." *Id.* "Far from indicating that a defendant intends to defend a suit on the merits, a motion to stay can serve to indicate the opposite—that a defendant intends to seek alternate means of resolving a dispute, and avoid litigation in that jurisdiction." *Id.* The court similarly found the motion to vacate the default judgment "without more" did not waive the personal jurisdiction defense. *Id.* at 520.

> We have held that a personal jurisdiction defense is not waived when a party makes a special appearance solely to contest personal jurisdiction's existence. *See* [*Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000)] (citing Fed. R. Civ. P. 12(b)(2)). This is so because by appearing solely to contest jurisdiction, a defendant clearly indicates that he is not willing to submit to the district court's jurisdiction. By the same token, we have held that "defects in personal jurisdiction are not waived by default when a party fails to appear or to respond . . . until after the default judgment was entered." *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1121 (6th Cir. 1994) (holding that a defendant did not waive his personal jurisdiction defense by moving to vacate a default judgment). Therefore, because moving to vacate a default judgment is not an indication that a defendant is submitting to the jurisdiction of the district court for disposition of a suit's merits, Defendants did not waive their personal jurisdiction defense by moving to vacate the district court's entry of a default judgment.

*Id.* The court did find, however, "it is clear that Defendants' filing of a general appearance with the

district court constituted a voluntary acceptance of the district court's jurisdiction, and therefore, a waiver of Defendants' personal jurisdiction defense." *Id.* Accordingly, the court reversed and remanded to the district court for further proceedings.

For present purposes, it is clear, under *Gerber*, Defendants' response to Plaintiff's motion for default judgment did not constitute a waiver of their personal jurisdiction defense. Defendants did not indicate they were submitting to the Court's jurisdiction by filing the response to Plaintiff's motion for default judgment, *see id.*, and in fact referenced their intention to resubmit the instant motion to dismiss. Defense counsel also has not filed a general notice of appearance on behalf of Defendants.

The question remains, however, whether the answer to the amended complaint submitted by Defendants in an apparent abundance of caution constitutes a waiver of the personal jurisdiction defense. The Court concludes it does not. The answer is explicitly subject to the contemporaneously filed motion to dismiss, and expresses Defendants' intention to retain the rights referenced therein. With such clear reservation of rights, the Court finds Plaintiff did not have "a reasonable expectation that [Defendants] will defend the suit on the merits," nor did the answer "cause the court to go to some effort that would be wasted if personal jurisdiction is later found lacking." *Id.* at 519; *see also King*, 694 F.3d at 659; *Salmon Falls Mfg. Co. v. Midland Tire & Rubber Co.*, 285 F. 214 (6th Cir. 1922) ("We have held that the question of general appearance is one of intent, actual or implied, and that where the whole purpose of the defendant's application to the court is to protect itself from personal jurisdiction, the conduct which will make the motion unavailing and destroy its basis must be clear and unequivocal."). In fact, listing defenses in answers is a common means of preserving defenses listed in Rule 12. *See* Fed. R. Civ. P.

9

12(h)(1)(B)(ii); *see also King*, 694 F.3d at 657-58 (holding the defense of insufficient service of process raised in an answer is sufficient to initially preserve it under Rule 12(h)(1)(B)(ii), which "gives a defendant the option to preserve the defense" either by pre-answer motion or by including the defense in his answer). Having exercised their "option" to raise the issue in a Rule 12 motion, the answer to Plaintiff's amended complaint did not waive the personal jurisdiction defense.

Accordingly, the Court concludes Defendants have not waived their personal jurisdiction defense and will consider the motion on the merits.

### B. Personal Jurisdiction

### 1. Legal Standard

In addition to jurisdiction over the dispute itself, a court must have jurisdiction over the parties to that dispute. Jurisdiction over the parties, known as personal jurisdiction, is not at issue where all parties willingly submit to a court's authority to hear a case. Where, as here, defendants[1] in a case hale from out of state and dispute the court's jurisdiction over them, the court can only exercise personal jurisdiction over those out-of-state defendants if they maintain "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted). Thus, courts consider whether the exercise of personal jurisdiction over parties is consistent with the Due Process Clause in the United States Constitution.[2]

---

[1] "Practically speaking, plaintiffs always concede personal jurisdiction, so the inquiry is typically restricted to defendants; because defendants who reside in the forum state will always be subject to the personal jurisdiction of the court, the inquiry is in most cases further restricted to non-resident defendants." *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012).

[2] A court must also have jurisdiction pursuant to the state's long-arm statute. *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 550 (6th Cir. 2007) . "Tennessee's long-arm

Under federal due process analysis, there are two bases of personal jurisdiction: "(1) general personal jurisdiction, where the suit does not arise from defendant's contacts with the forum state; and (2) specific jurisdiction, where the suit does arise from the defendant's contacts with the forum state." *Conn v. Zakharov*, 667 F.3d 705, 712-13 (6th Cir. 2012). Neither the United States Supreme Court nor the Sixth Circuit Court of Appeals has defined a precise test for courts to follow when determining whether the exercise of general jurisdiction is proper. *Id.* The touchstone for general jurisdiction is whether an out-of-state defendant's contacts with the forum state are "continuous and systematic," *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16, 414 n.9 (1984), and if so, general jurisdiction is proper even if the underlying action "is unrelated to the defendant's contacts with the state," *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005) (citations omitted).

By contrast, a three-factor test exists for determining whether a court properly exercises specific personal jurisdiction over an out-of-state defendant.

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

---

statute[,Tenn. Code Ann. § 20-2-214(a)(6),] has been interpreted to be 'coterminous with the limits on personal jurisdiction imposed' by the Due Process Clause of the United States Constitution, and thus, 'the jurisdictional limits of Tennessee law and of federal constitutional law of due process are identical.'" *Intera Corp. v. Henderson*, 428 F.3d 605, 616 (6th Cir. 2005) (quoting *Payne v. Motorists' Mut. Ins. Cos.*, 4 F.3d 452, 455 (6th Cir. 1993)). Accordingly, "the court need only determine whether the assertion of personal jurisdiction . . . violates constitutional due process." *Aristech Chem. Int'l v. Acrylic Fabricators*, 138 F.3d 624, 627 (6th Cir. 1998) (internal quotation marks and citation omitted).

*S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).[3]  The "purposeful availment" requirement–often referred to as the *sine qua non* of personal jurisdiction–"ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party or third person." *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 551 (6th Cir. 2007) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)) (internal citations and quotation marks omitted).  Although the out-of-state defendant's physical presence in the forum state is not required, specific personal jurisdiction is only proper where the defendant himself has created a substantial connection with the forum state. *Burger King*, 471 U.S. at 476.

On the second prong, a court must determine whether a plaintiff's cause of action arises from defendant's contacts with the forum state.  In making this determination, a court assesses "whether the causes of action were 'made possible by' or 'lie in the wake of' defendant's contacts, or whether the causes of action are 'related to' or 'connected with' the defendant's contacts with the forum state." *Air Prods.*, 503 F.3d at 553 (internal citations omitted).  Finally, if the court finds these first two prongs satisfied, it must decide whether the exercise of jurisdiction over the defendant is reasonable. *S. Mach.*, 401 F.2d at 381.  In considering whether exercise of personal jurisdiction is reasonable under this third prong, courts look to four factors: "(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the controversy." *Intera Corp.*, 428 F.3d at 618.

Whether relying on either the general or the specific theory of personal jurisdiction, the

---

[3] After first announcing this test in 1968, the Sixth Circuit has continued to rely on the same formulation.  *See Conn*, 667 F.3d at 713 (quoting *Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir. 2002)).

plaintiff bears the burden of establishing "specific facts" demonstrating the exercise of personal jurisdiction is proper, and the plaintiff must establish such facts by a preponderance of the evidence. *Conn*, 667 F.3d at 711. Where, as here, the court considers a motion to dismiss under Fed. R. Civ. P. 12(b)(2) without the aid of an evidentiary hearing, the plaintiff need only make a prima facie case the court has personal jurisdiction. *Id.* In some cases, where all the discovery regarding jurisdiction has been received and the parties do not dispute the facts relevant to jurisdiction, the "prima facie 'proposition loses some of its significance.'" *Id.* (quoting *Int'l Techs. Consultants v. Euroglas S.A.*, 107 F.3d 386, 391 (6th Cir. 1997)). Here, however, the facts regarding jurisdiction, as discussed below, are the facts essential to the resolution of Plaintiff's claims. Accordingly, the Court must view the pleadings in the light most favorable to Plaintiff, but can also consider Defendants' undisputed factual assertions. *Id.* "Dismissal in this procedural posture is proper only if all the specific facts which the plaintiff [] alleges collectively fail to state a prima facie case for jurisdiction." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).

### 2. Application

Plaintiff in this case argues the Court should exercise specific personal jurisdiction over Defendants. The Court will consider the three above-discussed factors in turn.

### a. Purposeful Availment

Under the first prong of the three-part test to establish specific personal jurisdiction, Plaintiff must show "the defendant[s] purposefully avail[ed] [themselves] of the privilege of acting in the forum state or causing a consequence in the forum state." *S. Mach.*, 401 F.2d at 381. As Plaintiff notes, Defendants engaged in business with a Tennessee entity, Cherokee Studios, and contacted Plaintiff repeatedly through text messages, emails, and phone calls while she was in Tennessee.

13

Although telephone calls or facsimiles may serve as a basis for personal jurisdiction in certain circumstances, those communications must "form the bases for the action." *Intera Corp.*, 428 F.3d at 616 (quoting *Neal v. Janssen*, 270 F.3d 328, 332 (6th Cir. 2001) ("[M]aking phone calls and sending facsimiles into the forum, standing alone, may be sufficient to confer jurisdiction on the foreign defendant where the phone calls and faxes form the bases for the action.")). The communications between Defendants and Plaintiff do not appear to serve as the basis of Plaintiff's complaint, as they would if she alleged fraud or another tort arising from communication. Moreover, exercising jurisdiction is typically inappropriate where a defendant does not seek to further his contacts with the state, but merely communicates with a plaintiff who chose to locate in the forum state. *See Rice v. Karsch*, 154 F. App'x 454, 462-63 (6th Cir. 2005) (telephone, mail, and e-mail correspondence occurred solely because a corporation chose to have offices in Tennessee, not because the defendant sought to further his personal business or create contacts); *Calphalon v. Rowlette*, 228 F.3d 718, 723 (6th Cir. 2000) (phone, mail, and facsimile contact in state occurred solely because the plaintiff chose to be headquartered there not because the defendant sought to further its business or otherwise create contacts). Were this case limited to these communications, the jurisdiction issue would present a close question.

But this case is not limited to these communications. Rather, Plaintiff alleges Defendants swore a criminal complaint against her, directed it to Tennessee, communicated with Tennessee officials to orchestrate her arrest and the seizure of her equipment, had the equipment sent to them, and kept close tabs on the progress of her arrest. In cases where out-of-state law enforcement have merely issued warrants, or submitted their warrants to nationwide databases, courts find personal jurisdiction lacking. *See Doe v. Delaware State Police*, – F. Supp. 2d –, No. 10–CV–3003 (KMK),

14

2013 WL 1431526, at *14 (S.D.N.Y. Apr. 4, 2013) ("[C]ourts nationwide . . . have regularly [ ] rejected assertions of personal jurisdiction against out-of-state law enforcement officials who have merely issued warrants and lodged their warrants in nationwide databases.") (collecting cases). "Courts also have found personal jurisdiction wanting where the out-of-state law enforcement officials responded to inquiries from forum state officials executing the warrant, or where out-of-state officials merely exchanged telephone calls with forum state officials or submitted forms incidental to extradition of the defendant from the forum state[.]" *Id.* (collecting cases).

However, in cases where "the allegations are that out-of-state law enforcement officials either had an established relationship with the forum state officials or otherwise closely coordinated their activities in the apprehension and/or extradition of the defendant, courts have found sufficient contacts to support personal jurisdiction." *Id.* (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 693 (9th Cir. 2001); *Adelphin v. Detective Gabriel Camacho*, No. 98-CV-6299, 1999 WL 301805 (E.D. Pa. May 11, 1999)). In *Lee*, the Ninth Circuit concluded the following facts were sufficient to establish personal jurisdiction.

> [T]he record shows that at least two NYSDCS employees, Senior Warrant and Extradition Officer Joseph Badstein and NYSDCS Corrections Officer Augustus Kirkley, and possibly others, took the "deliberate actions" of requesting that the LAPD arrange the extradition of a purported fugitive, using the California criminal justice system to accomplish the extradition, sending the LAPD an identification packet to facilitate the extradition, regularly communicating with the LAPD during the extradition process, and traveling to Los Angeles to escort the purported fugitive back to New York.

*Lee*, 250 F.3d at 693. After distinguishing two district court cases finding personal jurisdiction inappropriate in out-of-state warrant cases, the court concluded "those NYSDCS defendants who traveled to Los Angeles to retrieve [the plaintiff], or were otherwise directly and significantly involved in [the plaintiff's] extradition, purposefully availed themselves of the privilege of

15

conducting activities in California." *Id.* at 694.

The allegations here similarly establish purposeful availment. Plaintiff alleges Defendants took "deliberate actions" in requesting Tennessee officials arrest Plaintiff and seize her property. They used the Tennessee criminal justice system to accomplish both the arrest and the seizure and allegedly maintained close contact with Tennessee officials to accomplish Plaintiff's arrest. Such contact is demonstrated by the alleged call to Defendant Boyd made by the Tennessee detective who arrested Plaintiff and the relatively short time period between seizure of Plaintiff's equipment and its arrival in Wichita County. Unlike the *Lee* defendants, none of the Defendants here physically entered Tennessee. However, *Lee*'s holding was not limited to the defendants who traveled to Los Angeles, but extended to defendants who "were otherwise directly and significantly involved in [the plaintiff's] extradition." *Lee*, 250 F.3d at 694; *see also Adelphin*, 1999 WL 301805, at *4 (finding personal jurisdiction appropriate where New Jersey law enforcement agents faxed an arrest warrant to Pennsylvania authorities with intent they arrest and detain the plaintiff until he could be extradited); *Lohman v. Twp. of Oxford*, No. 91-7037, 1992 WL 95914, at *3 (E.D. Pa. Apr. 22, 1992) (finding personal jurisdiction appropriate where New Jersey authorities issued an arrest and fugitive warrant for the plaintiff and directed the information to Pennsylvania authorities). *But see Tisdale v. Nadramia*, No. 3:11–647–MBS, 2012 WL 693525, at *3 (D.S.C. Mar. 5, 2012) (concluding exercising personal jurisdiction over Florida officials who "merely obtained the services of York County Sheriff's Department to execute a fugitive warrant" would offend traditional notions of fair play and substantial justice). Accordingly, as in *Lee*, Plaintiff's allegations are sufficient to establish purposeful availment on the part of the individual Defendants.

Contrary to Defendants' argument, the Court's ruling would not subject all law enforcement

to the jurisdiction of every other state.  This case does not present the typical circumstance where a law enforcement official submits a warrant to a national database or even forwards the information to state officials upon suspicion a fugitive is present in another state.  Courts routinely find jurisdiction wanting in those circumstances. *See Doe*, 2013 WL 1431526, at *14.  Rather, this case involves law enforcement officers who were personally involved with Plaintiff, who obtained a warrant based on alleged misdeeds in a prior business relationship, who contacted Tennessee officials to seek Plaintiff's arrest, who sought confiscation of property related to the personal business relationship, and who maintained contact with Tennessee officials throughout the process. The Court assumes such cases are rare.  Moreover, in cases finding officers purposefully availed themselves of the forum state's jurisdiction, the officers had *less* personal involvement than the officers did here. *See Lee*, 250 F.3d at 678 (officers responded to representations of the Los Angeles Police Department the plaintiff was an absconded fugitive); *Adelphin*, 1999 WL 301805, at *1 (facts stated in opinion do not suggest officers were personally involved with the plaintiff); *Lohman*, 1992 WL 95914, at *1 (same).  Although Defendants fear exercising jurisdiction in this case could be extrapolated to all other fugitive warrant cases, the Court is confident very few of those cases will involve law enforcement entities using the fugitive warrant system for personal reasons.  In cases where such use is alleged and established, personal jurisdiction is appropriate.

One additional issue is presented by this case.  Plaintiff, unlike the plaintiff in *Lee*, lists WCSO, a law enforcement entity, as a defendant.  The court in *Lee* specifically noted its holding did not extend to the entity at issue:

> First, plaintiffs did not sue NYSDCS as an entity. Plaintiffs sued Philip Coombe, Jr., Acting Director of NYSDCS, and "50 unknown named employees of [NYSDCS] ... in their individual capacities." The question for the district court, therefore, was whether any of these individual defendants "engage[d] in conduct aimed at, and

17

having effect in" California. The question was not whether NYSDCS as an entity or the individual NYSDCS defendants collectively purposefully availed themselves of the privilege of conducting activities in California. NYSDCS as an entity may not have directed its efforts to arrest Robert Sanders toward California by simply registering Robert Sanders's fugitive warrant with the NCIC. But individual employees of NYSDCS did direct their efforts toward California to arrest, extradite, and transport Kerry Sanders after he was misidentified as the fugitive Robert Sanders.

*Lee*, 250 F.3d at 693. Plaintiff in this case not only lists WCSO as a defendant, but also sues Defendants Duke and Boyd in their official capacities. Suing these officers in their official capacities is equivalent to suing the entity that employs them. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).

However, district courts in Tennessee hold law enforcement agencies are inappropriate defendants; plaintiffs must sue the municipalities the agencies represent. *Lamb v. Tenth Judicial Dist. Drug Task Force*, – F. Supp. 2d –, No. 1:13–CV–73, 2013 WL 1896968, at *7 (E.D. Tenn. May 3, 2013); *see Rose v. Sevier Cnty.*, No. 3:08–cv–25, 2012 WL 6141000, at *3 (E.D. Tenn. Dec. 11, 2012) (concluding a sheriff's department is not a suable entity under § 1983) (citing *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) (holding a police department is not an entity which can be sued under § 1983)); *Bradford v. Gardner*, 578 F. Supp. 382, 383 (E.D. Tenn. 1984) ("[T]he Sheriff's department itself is not a suable entity under Section 1983 . . . ."); *see also McKinney v. McNairy Cnty.*, No. 1:12–cv–01101–JDB–egb, 2012 WL 4863052, at *3 (W.D. Tenn. Oct. 11, 2012) (quoting *Mathes v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:10–cv–0496, 2010 WL 3341889, at *2 (M.D. Tenn. Aug. 25, 2010) ("It appears that, since *Matthews*, federal district courts in Tennessee have frequently and uniformly held that police departments and sheriff's departments are not proper parties to a § 1983 suit.")). These courts base this determination on Tennessee law pursuant to Fed. R. Civ. P. 17(b), which requires a party's capacity to be sued be determined "by

18

the law of the state where the court is located" if that party is not an individual or corporation. *See Lamb*, 2013 WL 1896968, at *7 n.6. Even if Texas law applies to such a determination, *see Bd. of Directors of St. Francis Levee Dist. v. Bodkin*, 69 S.W. 270, 271-72 (Tenn. 1902) (considering Arkansas law to determine if an Arkansas municipality had the capacity to be sued), Wichita County would still be the proper defendant. *See Cooper v. Smith*, No. 9:05cv157, 2007 WL 339174, at *8 (E.D. Tex. Jan. 31, 2007) ("Under Texas law, a city or county can designate whether its departments or subdivisions can sue or be sued. A plaintiff cannot sue a city or county department or subdivision unless it enjoys separate legal existence.") (citing *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir.1991)) (internal citation omitted); *see also Brown v. Wichita Cnty.*, No. 7:05–CV–0108–O–KA, 2009 WL 2393821, at *3 n.1 (granting summary judgment for Wichita County Sheriff in his official capacity as duplicative of suit against Wichita County). Accordingly, although Plaintiff has sued WCSO, her suit should be construed as a suit against Wichita County, Texas.[4]

By virtue of Defendant Duke's participation in the alleged conspiracy to commit these violations of Plaintiff's rights, the Court also has jurisdiction over the county. Defendant Duke is the Sheriff of Wichita County. "It has long been recognized that, in Texas, the county sheriff is the county's final policymaker in the area of law enforcement, not by virtue of delegation by the county's governing body but, rather, by virtue of the office to which the sheriff has been elected[.]" *Turner v. Upton Cnty.*, 915 F.2d 133, 136 (5th Cir. 1990). The Fifth Circuit has explained,

Because of the unique structure of county government in Texas . . . elected county

---

[4] The Court so construes Plaintiff's claims for the purposes of this motion only. The Court expresses no opinion how the claims would fare on a motion to dismiss for failure to state a claim or a motion for summary judgment.

> officials, such as the sheriff . . . hold[ ] virtually absolute sway over the particular tasks or areas of responsibility entrusted to him by state statute and is accountable to no one other than the voters for his conduct therein. . . . Thus, at least in those areas in which [the sheriff], alone, is the final authority or ultimate repository of county power, his official conduct and decisions must necessarily be considered those of one 'whose edicts or acts may fairly be said to represent official policy' for which the county may be held responsible under section 1983.

*Id.* (quoting *Familias Unidas v. Briscoe*, 619 F.2d 391, 404 (5th Cir. 1980)).  Those duties entrusted to him include the actions underlying this case.

> Among other responsibilities he is charged with preserving the peace in his jurisdiction and arresting all offenders. Tex. Code Crim. P. arts. 2.13, 2.17. As the county's final policymaker in this area, he has been empowered by the state to "define objectives and choose the means of achieving them" without county supervision. *Rhode v. Denson*, 776 F.2d 107, 109 (5th Cir. 1985), *cert. denied*, 476 U.S. 1170, 106 S.Ct. 2891, 90 L.Ed.2d 978 (1986). These means include the investigation of crimes, the collection of evidence thereof, and the presentation of this evidence to the district attorney for purposes of determining the appropriateness of prosecution.

*Id.*  Accordingly, because the Court has jurisdiction over Defendant Duke for his actions as Sheriff of Wichita County, the Court likewise has jurisdiction over the county itself.

### b.  Arises From Defendants' Contacts

On the second prong, Plaintiff must show by a preponderance of the evidence that the cause of action "arises from" Defendants' actions in Tennessee.  *S. Mach.*, 401 F.2d at 381.  Although the Sixth Circuit has formulated the test for this prong in different ways, *see Air Prods.*, 503 F.3d at 553, courts should consider whether a plaintiff's cause of action arises from "Defendants' contacts with the forum state as well as actions directed at the forum state." *Id.*  Here, as explained above, the Court has jurisdiction over Defendants due to their actions directed at Tennessee.  Plaintiff alleges a deprivation of her constitutional rights as a result of her arrest, confinement, and the seizure of her equipment in Tennessee; malicious prosecution in the transfer of the arrest warrant to Tennessee;

20

abuse of process, false arrest, and false imprisonment arising from her arrest in Tennessee; conversion as a result of the seizure of her property in Tennessee; tortious interference with a business relationship due to her arrest and the seizure of her property in Tennessee; breach of the implied covenant of good faith and fair dealing, which resulted from the transfer of the arrest warrant to Tennessee; and various counts of conspiracy to commit these violations. These claims arise from the contacts with Tennessee the Defendants created when seeking Plaintiff's arrest and the seizure of her property. Therefore, Plaintiff has established the second prong of the specific-jurisdiction inquiry.

### c. Reasonableness

The more difficult consideration in this case is the third prong. The Court must determine whether exercising jurisdiction over these defendants is reasonable. As noted above, the Court considers four factors in making the reasonableness determination: "(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the controversy." *Intera Corp.*, 428 F.3d at 618.

The burden on Defendants in this case is great. Not only are Defendants residents of Texas, but Wichita County is a municipal corporation of Texas. Thus the first factor weighs in favor of not exercising jurisdiction. On the other hand, under the second factor, Tennessee has a strong interest in maintaining jurisdiction. Not only did one of its residents allegedly suffer constitutional violations at the hands of out-of-state defendants, but Defendants utilized Tennessee law enforcement to do so. Tennessee has a strong interest in ensuring out-of-state municipalities and law enforcement agencies do not use Tennessee's infrastructure to exact constitutional injury on its own citizens. This factor weighs strongly in favor of maintaining jurisdiction. As to the third factor,

21

Plaintiff has a strong interest in obtaining relief in Tennessee. Not only are moving Defendants implicated by Plaintiff's suit, but other parties to this suit include non-moving Defendants from New York and a non-moving Defendant from Maryland who maintains a Tennessee place of business. Because Hamilton County, Tennessee is the point of convergence of an alleged multi-state conspiracy, as well as the location where the actual injury occurred, Plaintiff has a valid interest in having her case heard in Tennessee. Such is true for the final factor as well. Although Texas has a strong and valid interest in considering allegations of unconstitutional conduct by its municipalities, as noted, multiple municipalities are implicated by this case. Were the Court to rule the exercise of jurisdiction is unreasonable in this case, Plaintiff could find herself prosecuting suits in as many as three different states presenting similar evidence in each case. The efficient resolution of this action counsels in favor of maintaining this action in one court. This court, being located in the district in which the injury occurred, is the most logical place to maintain that action.

Accordingly, the majority of the factors weigh in favor of jurisdiction in Tennessee, and the Court finds it reasonable to exercise jurisdiction over Defendants.

## III.    CONCLUSION

For the foregoing reasons, the Court concludes it has personal jurisdiction over Defendants. Defendants' motion will be **DENIED** (Court File No. 35).

**An order shall enter.**

/s/_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**

22