UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| DONNA L. JOHNSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 1:12-CV-394 |
| v. | ) |
| | ) Judge Curtis L. Collier |
| WICHITA COUNTY, TEXAS SHERIFF'S OFFICE, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## **M E M O R A N D U M**

Before the Court are motions for summary judgment filed by Defendants Wichita County, Texas Sheriff's Office ("WCSO"), David Duke ("Duke"), and Alan Boyd ("Boyd"), in their individual and official capacities (collectively the "WCSO Defendants"), as well as Defendants Rochester, New York Police Department ("RPD") and Nasar Zenelovic ("Zenelovic"), in his individual and official capacity (collectively the "RPD Defendants") (Court File Nos. 104 and 106, respectively). Plaintiff Donna L. Johnson ("Plaintiff") responded in opposition (Court File No. 113) and the WCSO Defendants filed a reply (Court File No. 117). For the following reasons, the Court will **GRANT** the RPD Defendants' summary judgment motion and will **GRANT IN PART** and **DENY IN PART** the WCSO Defendants' summary judgment motion. As described below, the remaining claims in this case will be (1) the 42 U.S.C. § 1983 claim against Boyd, in his individual capacity, for arrest without probable cause and (2) the state law claims against Boyd and Duke, in their individual capacities, for abuse of process.

**I.     FACTUAL BACKGROUND**

At the relevant times, Plaintiff operated Cherokee Studios, a photography company specializing in portraits of law enforcement and other government personnel. She ran the business out of her Chattanooga, Tennessee studio. Plaintiff has been in the professional portraiture field for over twenty years. In early 2011, Plaintiff attended a law enforcement trade show in Texas and signed up several agencies as customers. In July 2011, she traveled to Texas to photograph personnel from the various agencies, one of which was WCSO, whose elected sheriff was Duke. After photographing WCSO's and other agencies' employees, she returned to Chattanooga at the end of July to produce the photographs. Before departing Texas, she received payment from some 200 WCSO personnel who ordered packages. The WCSO Defendants and Plaintiff disagree about the total amount, but it was several thousand dollars. As part of the arrangement, Plaintiff agreed to provide free of charge to WCSO digital images of the portraits as well as composite prints of the entire office. She agreed to ship everything within six to eight weeks from departing Texas at the end of July.

According to her affidavit, by September 25, 2011, Plaintiff had timely fulfilled 86% of the orders from other Texas law enforcement agencies whose portraits she took during her July trip, a a statistic the WCSO Defendants do not dispute (Court File No. 113-1, ¶ 109). However, she was delayed in finishing her portraits for WCSO. The parties dispute what communications occurred regarding the delay. Duke states in his affidavit that "during fall 2011 Donna Johnson cut off contact with my office and failed to respond to any communication efforts" (Court File No. 105-4, ¶ 6). However, in response to Plaintiff's request for admissions, the WCSO Defendants admit that "Sheriff Duke text messaged Donna Johnson between the end of August, 2011, and November 30, 2011" (Court File No. 113-20, Response 1).

Plaintiff also says she communicated with Duke over text for a number of months. She states in her affidavit that during a September 16, 2011 text exchange Duke granted her until mid-December 2011 to finish producing and shipping the materials to WCSO (Court File No. 113-1, ¶¶ 134-37). She also says that on September 23 Duke sent her a text message asking, "Will you have all paid portraits to us by the end of the year? If not let me know so I can manage this. All good if done by then," to which she responded, "yes Sir, I will! Thank you very much for letting everyone know" (*id*. at ¶¶ 138-39). In addition, she also states that in response to an October 18 text from Plaintiff apologizing for the delay, Duke texted back, "I know. are you still going to have everything to us by the end of the year? I can handle it til then. will photos be here by thanksgiving?" (*id*. at ¶¶ 140-41).[1] She replied, "it will be close. I believe the first week of December is very realistic," to which he responded, "ok" (*id*. at ¶¶ 142-43). Plaintiff further states that on November 12 she informed Duke by text that the materials would ship the first week of December and he replied, "I look forward to getting them there is grumbling in the troops but they will be fine when they actually have them. I have been telling them to hold on and you have assured me they will get them. No problems here. Send me tracking when you can" (*id*. at ¶¶ 144-45). That same day, Duke also informed her to wait and ship all of the items together instead of sending a partial shipment, which she had offered to do (*id*. at ¶¶ 146-47).

Plaintiff notes in her affidavit that at 8:00 p.m. on November 15 Duke called her cell phone and they had a twenty minute conversation about the portraits (*id*. at ¶¶ 149-50). Plaintiff's phone records submitted to the Court show a twenty-one minute incoming call at 8:00 p.m. on that date (Court File No. 113-6, p. 28). Duke asked whether she needed into January to ship the packages.

---

[1] The text messages, including typos, are as they appear in Plaintiff's affidavit.

She said she was still on track for early December (*id*. at ¶¶ 151). She also told Duke she could ship all of the individual portrait packages the next day, if he would like, but that the composites were not finished. He said to wait until everything was complete before shipping.

The next morning, Duke sent an email to all WCSO personnel asking them to report how much money they gave Plaintiff and noting that "[w]e may have an issue with her and [the Criminal Investigation Division] is star[t]ing an investigation" (Court File No. 20). Duke then appointed Boyd to conduct the investigation. The following day, November 17, Boyd swore an arrest affidavit, which read as follows:

> On 25-27 July 2011 affiant, Deputy Alan Boyd along with other employees of the Wichita County Sheriff's Office (WCSO) participated in the production of a historical department composite photograph conducted by Donna Johnson doing business as (DBA) Cherokee Studios, Inc. (CSI) P.O. Box 579 Ooltewah TN 37363. During this time both sworn and civilian employees posed for individual as well as group photo's which would be available for the employees to purchase. The employees who purchased the photographs were required to pay for the service at this time and were given a receipt/invoice for each individual purchase. Johnson advised the photographs would be available in 6-8 weeks. On 16 November 2011 *affiant, initiated this case for investigation due to the photographs not being received/delivered and after numerous attempts to contact Johnson by her listed telephone number and e-mail address have gone unanswered.* Furthermore it was learned that recently several other Texas law enforcement agencies have had similar results when dealing with Johnson and Cherokee Studios Inc. Approximately two hundred (200) WCSO employees participated in this event with a minimum purchase of $39.00 dollars per employee totaling $7,800.00 dollars. Many employees purchased additional photo's for an additional fee. As of 17 November 2011 affiant, has received copies of the invoices from twenty six (26) WCSO employees in the amount of $1,656.00 dollars. Based on the above facts affiant believes Johnson committed the offense of theft O/$1,500 /U $20,000 a violation of Section 31.03 Texas Penal Code a state jail felony.

(Court File No. 105-1) (emphasis added) (typos in original).

Based on the above affidavit, a Texas arrest warrant was issued by a Wichita County judge on November 17. Plaintiff's affidavit states that on November 21 she sent Duke a text to let him

4

know everything would be shipped in late November or the beginning of December. He responded: "Donna it is all good here and no problems. I hope you and your family have a happy thanksgiving" (Court File No. 113-1, ¶¶ 160-61). They had another text exchange on November 28, Plaintiff says, where she told Duke she did not want to go into the details of her difficulties but reiterated she was in the process of getting the shipment out and noted they had agreed to the end-of-the-year deadline; Duke responded, " Not necessary Donna. Send me tracking number when you ship. All good here" (*id*. at ¶¶ 165-66).

On November 30, Deputy Jimmy Clift of the Hamilton County, Tennessee Sheriff's Office executed a Tennessee fugitive arrest warrant issued on Plaintiff. Deputy Clift filed an affidavit and obtained a search and seizure warrant for photography equipment he found when arresting Plaintiff at her Chattanooga, Tennessee hotel room. Deputy Clift logged the evidence and shipped it to WCSO. Plaintiff was transferred to Corrections Corporation of America's ("CCA") Silverdale facility near Chattanooga. She claimed that CCA staff beat and threatened her as retribution for her alleged crime. Judge Clarence Shattuck of the Hamilton County General Sessions Court entered an Agreed Order dismissing with prejudice the fugitive warrant on January 18, 2012. The order required that Plaintiff "complete the remainder of the project for the Wichita County Sheriff's Office" in exchange for the case being dismissed and her equipment being returned (Court File No. 105-3). The underlying case in Wichita County was subsequently dismissed with prejudice upon WCSO's request (Court File No. 113-19).

In her complaint, Plaintiff alleged that before the warrant was issued and Plaintiff was arrested, the RPD, through Zenelovic, contacted other customers of Plaintiff, including WCSO. Plaintiff avers that during these communications Zenelovic falsely accused Plaintiff of engaging in

5

criminal activity and conspired with Duke and Boyd to illegally have her arrested and her photography equipment seized. Plaintiff has not, however, pointed to any evidence on summary judgment to show that the RPD Defendants had anything to do with her arrest warrant, her arrest, the seizure of her equipment, or any other alleged harm.

Plaintiff filed the instant suit alleging, *inter alia*, that the WCSO Defendants violated her Fourth, Fifth, and Fourteenth Amendment rights (Count One); that the WCSO and RPD Defendants conspired to deprive her of constitutional rights in violation of 42 U.S.C. § 1985 (Count Six and Eight); that all defendants committed intentional infliction of emotional distress (Count Seven); that the WCSO Defendants maliciously prosecuted her (Count Nine); that the WCSO and RPD Defendants conspired to maliciously prosecute her (Count Ten); that the WCSO Defendants committed abuse of process, false arrest, and false imprisonment (Count Eleven); that the WCSO and RPD Defendants conspired to cause the abuse of process, false arrest, and false imprisonment (Count Twelve); that the WCSO and RPD Defendants tortiously interfered with a business relationship (Counts Thirteen and Fifteen); that the WCSO and RPD Defendants conspired to tortiously interfere with a business relationship (Count Fourteen); that the WCSO converted her property; and that the WCSO breached an implied covenant of good faith and fair dealing.

Plaintiff and CCA reached a settlement and stipulated to CCA's dismissal from the case, which rendered moot certain counts not listed above that were only against CCA (Court File 102). The Court will now dispose of the remaining defendants' motions for summary judgment.

## II.     STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court views the evidence, including all reasonable inferences, in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). However, the non-movant is not entitled to a trial based merely on its allegations; it must submit significant probative evidence to support its claims. *See Celotex*, 477 U.S. at 324; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Should the non-movant fail to provide evidence to support an essential element of its case, the movant can meet its burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

At summary judgment, the Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). If the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court should enter summary judgment. *Id.* at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

### III. DISCUSSION

#### A. Parties

##### 1. Wichita County Sheriff's Office

7

The claims against WCSO cannot survive summary judgment because WCSO is not a suable entity under 42 U.S.C. § 1983. Federal Rule of Civil Procedure 17(b) requires that a party's capacity to be sued be determined "by the law of the state where the court is located" if that party is not an individual or corporation. *See Lamb v. Tenth Judicial Dist. Drug Task Force*, 944 F. Supp. 2d 586, 595, n. 6 (E.D. Tenn. 2013); *but see Directors of St. Francis Levee Dist. v. Bodkin*, 69 S.W. 270, 271-72 (Tenn. 1902) (considering Arkansas law to determine if an Arkansas municipality had the capacity to be sued in Tennessee). Under both Texas and Tennessee law, a sheriff's office, unlike a county or city government, may not be sued under § 1983. *See Yates v. Gayle*, 6:06CV455, 2007 WL 671584 (E.D. Tex. Feb. 27, 2007) (holding that subunits—including Texas sheriff's offices—of local governments may not be sued under § 1983); *see also Lamb*, 944 F. Supp. 2d at 594 (same rule in Tennessee); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). Accordingly, the Court will **GRANT** summary judgment on the claims against WCSO.

### 2. Wichita County

Defendants sued Duke and Boyd in their official capacities, which would ordinarily constitute a suit against the local government employing them. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). However, Plaintiff expressly states in her summary judgment response brief that "the County is not a party to this suit" (Court File No. 113, p. 14). Given this clarification, the Court will **DISMISS** the claims against Duke and Boyd in their official capacities; thus no claim will survive against Wichita County.

### 3. The RPD Defendants

As noted above, Plaintiff has not pointed to evidence showing that the RPD Defendants had anything to do with the arrest warrant, her arrest, the seizure of her equipment, or any other alleged

8

harm. In fact, Plaintiff failed to respond to the RPD Defendants' motion for summary judgment, despite the Court's order for her to do so (Court File No. 111). *See* E.D. Tenn. L.R. 7.2 ("Failure to respond to a motion may be deemed a waiver of any opposition to the relief sought."). Given that the RPD Defendants' summary judgment brief points to the absence of a basis for Plaintiff's claims against them, and that Plaintiff has failed to put forth any evidence regarding the claims or to even respond to the motion for summary judgment, the Court will **GRANT** the RPD Defendants' motion for summary judgment. Thus the remaining defendants in this case are Duke and Boyd in their individual capacities.

**B. Federal Claims**

To state a general claim under 42 U.S.C. § 1983, a plaintiff must "demonstrate that a person acting under color of state law 'deprived [him] of rights, privileges or immunities secured by the Constitution or laws of the United States.'" *Barker v. Goodrich*, 649 F.3d 428, 432 (6th Cir. 2011) (citing *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005)). It is undisputed that Boyd and Duke were acting under color of state law; thus the question is whether a deprivation of rights occurred.

As a preliminary matter, the Court notes that Plaintiff's § 1983 claims for arrest without probable cause and illegal search and seizure are analyzed under the Fourth Amendment, not due process under the Fifth or Fourteenth Amendments. *See Jackson v. Cnty. of Washtenaw*, 310 F. App'x 6, 7 (6th Cir. 2009) (citing *Gregory v. City of Louisville*, 444 F.3d 725, 750 (6th Cir.2006)). This includes Plaintiff's Fourteenth Amendment claim based on substantive due process, given that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion

of 'substantive due process,' must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Accordingly, the Court will **GRANT** summary judgment on the Fifth and Fourteen Amendment claims.

### 1. Arrest Without Probable Cause

Plaintiff claims Duke and Boyd violated the Fourth Amendment by causing him to be arrested without probable cause. "Under § 1983, probable cause to justify an arrest means facts and circumstances within the official's knowledge that are sufficient to warrant a prudent person in believing, in the circumstances shown, that the suspect has committed or is about to commit an offense." *Drake v. Vill. of Johnstown, Ohio*, 534 F. App'x 431, 439 (6th Cir. 2013). "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *United States v. Lapsins*, 570 F.3d 758, 764 (6th Cir. 2009) (quoting *Illinois v. Gates*, 462 U.S. 213, 236 n. 13 (1983)). "An investigator may be held liable under § 1983 for making material false statements either knowingly or in reckless disregard for the truth to establish probable cause for an arrest." *Wilkerson v. Warner*, 545 F. App'x 413, 431-32 (6th Cir. 2013) (quoting *Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir.2003)). "To overcome an officer's entitlement to qualified immunity, however, a plaintiff must establish: (1) a substantial showing that the defendant stated a deliberate falsehood or showed reckless disregard for the truth and (2) that the allegedly false or omitted information was material to the finding of probable cause." *Id*.

In the instant case, Plaintiff was alleged to have committed the crime of theft, which under Texas is committed when a person "unlawfully appropriates property with intent to deprive the owner of property." Tex. Penal Code Ann. § 31.03. Appropriation of property is unlawful if "it is without the owner's effective consent." *Id.* "To constitute theft in a contract situation, the evidence

must show that the accused intended to deprive the owner of the money advanced under the contract at the time the money was accepted by the accused." *Lopez v. State*, 316 S.W.3d 669, 676 (Tex. App. 2010) (citing Tex. Penal Code Ann. § 31.01(1)); *see also* Tex. Penal Code Ann. § 31.01(1) ("[F]ailure to perform the promise in issue *without other evidence of intent or knowledge* is not sufficient proof that the actor did not intend to perform or knew the promise would not be performed."). Although there may still be a theft if criminal intent arises after contract formation, "the deprivation of property cannot occur prior to the formation of the requisite intent." *Ehrhardt v. State*, 334 S.W.3d 849, 856 (Tex. App. 2011). Thus the deprivation of property must precede or accompany formation of criminal intent to unlawfully deprive the victim of the property.

### a. Boyd

Here, Plaintiff has set forth evidence that on numerous occasions before Boyd swore the arrest affidavit, Duke conveyed to Plaintiff over text message that she had until the end of 2011 to ship the photographs to WCSO.[2] She also presents evidence that she consistently represented to Duke that she would deliver them by early December, well within the terms of the new agreement. Additionally, Plaintiff says she and Duke had a twenty minute phone call about the photos on November 15.

Boyd's arrest affidavit rested mainly on his assertion that he "initiated this case for investigation due to the photographs not being received/delivered and *after numerous attempts to contact Johnson by her listed telephone number and e-mail address have gone unanswered*." Whether or not that statement is technically true, it would be highly misleading if indeed Duke was

---

[2] The Court notes that the WCSO Defendants' answer to interrogatories admits that Duke and Plaintiff were exchanging text messages between the end of August and November 30, 2011.

11

in contact with Plaintiff and they agreed to extend the deadline to the end of the year. Viewing the facts in the light most favorable to Plaintiff, a reasonable investigation on Boyd's part should have uncovered that Duke and Plaintiff were in communication and Plaintiff was working to meet the extension she was given.[3] Such a failure demonstrated a reckless disregard for the truth.

Further, Plaintiff has made a substantial showing that "the allegedly false or omitted information was material to the finding of probable cause." *Wilkerson*, 545 F. App'x at 431-32 (quoting *Vakilian*, 335 F.3d at 517). The omitted information—that Duke and Plaintiff were in regular contact during the time leading up to the warrant's issuance and agreed to an extension—would have been central to the probable cause analysis. To demonstrate theft in the contract context, "evidence must show that the accused intended to deprive the owner of the money advanced under the contract at the time the money was accepted by the accused." *Lopez*, 316 S.W.3d at 676 (citing Tex. Penal Code Ann. § 31.01(1)). That Plaintiff was keeping in regular contact with Duke, and that they agreed to an extension, which Plaintiff consistently said she could meet, would have seriously undermined probable cause to believe Plaintiff intended, from the time she received payment, to unlawfully deprive WCSO's personnel of money. The remaining unsubstantiated statement in the affidavit regarding how "other Texas law enforcement agencies have had similar results when dealing with Johnson . . . ." would provide insufficient grounds, standing alone, for a reasonable officer to find probable cause to believe Plaintiff had stolen from WCSO's personnel. Accordingly, the Court will **DENY** Boyd's motion for summary judgment on

---

[3] As Plaintiff points out, such an investigation might also have uncovered that, as of September 25, 2011, Plaintiff had timely fulfilled 86% of the orders from other Texas law enforcement agencies whose portraits she took during her July trip to Texas (Court File No. 113-1, ¶ 109).

the arrest without probable cause claim pursuant to § 1983.

### b. Duke

Duke did not swear out the arrest warrant affidavit. Rather, under Plaintiff's facts, he instigated an investigation into Plaintiff without adequate grounds, as he was in contact with her and knew she agreed to provide the photographs before the end of the year according to their new arrangement. Likely recognizing the somewhat tenuous connection between Duke and the actual arrest, Plaintiff failed to articulate a theory for why Duke should also be held liable for arrest without probable cause. *See* Court File No. 113, p. 17-18. Because Plaintiff has not brought forth facts showing a deliberate falsehood or reckless disregard for the truth on Duke's part proximately causing Plaintiff's arrest, the Court will **GRANT** Duke summary judgment on the arrest without probable cause claim. Duke's role may be more properly analyzed under abuse of process below.

### 2. Seizure

The WCSO Defendants move for summary judgment on the Fourth Amendment search and seizure claim relating to Plaintiff's photograph equipment, which had been seized by Deputy Clift in Chattanooga pursuant to an arrest warrant obtained by that deputy. Plaintiff does not address the search and seizure issue in her response brief. The Sixth Circuit's "jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." *Brown v. VHS of Michigan, Inc*., 545 F. App'x 368, 372 (6th Cir. 2013) (collecting cases). Accordingly, the Court will **GRANT** summary judgment against Plaintiff's search and seizure claim.

### 3. Civil Rights Conspiracy

As Defendants point out, there is no evidence that any actions taken by the defendants in this case were motivated by a class-based animus, which is required to establish a civil rights conspiracy under 42 U.S.C. § 1985. *See Baseball at Trotwood, LLC v. Dayton Prof'l Baseball Club, LLC*, 204 F. App'x 528, 539 (6th Cir. 2006). Plaintiff does not point to any evidence, nor even address the issue, in her brief opposing summary judgment. Accordingly, the Court deems Plaintiff's §1985 claim abandoned and will **GRANT** summary judgment on it. *Brown,* 545 F. App'x at 372.

## C. State Claims

### 1. Malicious Prosecution

To succeed on a claim for malicious prosecution under Tennessee law, "a plaintiff must prove that (1) the defendant had instituted a prior suit or judicial proceeding without probable cause, (2) the defendant brought such prior action with malice, and (3) the prior action was finally terminated in plaintiff's favor." *Meeks v. Gasaway*, No. M2012-02083-COA-R3CV, 2013 WL 6908942, at *4 (Tenn. Ct. App. Dec. 30, 2013) (citing *Himmelfarb v. Allain*, 380 S.W.3d 35, 38 (Tenn. 2012)). The WCSO Defendants contend Plaintiff has not presented evidence supporting the third element. Although it is not essential that the proceeding be terminated following a full trial on the merits, "a judgment that terminates a lawsuit in favor of one of the parties must address the merits of the suit rather than terminating the suit on procedural or technical grounds." *Himmelfarb*, 380 S.W.3d at 38. For instance, mere "abandonment of the underlying case is not []sufficient to establish favorable termination for purposes of malicious prosecution." *Lane v. Becker*, 334 S.W.3d 756, 761 (Tenn. Ct. App. 2010). "If a court concludes that the termination does not relate to the merits—reflecting on neither innocence of nor responsibility for the alleged misconduct—the termination is not favorable in the sense that it would support a subsequent action for malicious prosecution." *Himmelfarb*, 380

14

S.W.3d at 41 (quoting *Parrish v. Marquis*, 172 S.W.3d 526, 531 (Tenn. 2005), overruled on other grounds by *Himmelfarb*, 380 S.W.3d 35).

"While various modes of termination can be construed as favorable to an accused, a cause dismissed pursuant to a *compromise and/or settlement* is an indecisive termination and, thus, cannot sustain an action for malicious prosecution." *Mitchem v. City of Johnson City*, No. 2:08-CV-238, 2010 WL 4363399, at *6 (E.D. Tenn. Oct. 27, 2010) (quoting *Bowman v. Breeden*, No. CA 1206, 1988 WL 136640, at *2 (Tenn. Ct. App. Dec. 20, 1988)); *see also Stone v. City of Grand Junction, Tenn.*, 765 F. Supp. 2d 1060, 1077 (W.D. Tenn. 2011) (quoting same rule from *Bowman*).

In the instant case, Hamilton County General Sessions Court Judge Shattuck issued an Agreed Order dismissing with prejudice the Tennessee fugitive warrant he had previously issued (Court File No. 105-3). The Order decreed that WCSO would immediately return Plaintiff's photography equipment and "upon receipt of the items and equipment, and within thirty (30) days after confirmation that the returned items and equipment are in the same good condition and working order, Ms. Johnson will complete the remainder of the project for the Wichita County, Texas Sheriff's Office" (*id.*). Judge Shattuck notes in his affidavit that there was never a hearing on the merits (Court File No. 105-9, ¶ 7). The case in Wichita County was subsequently dismissed at the behest of WCSO (Court File No. 113-19).

The WCSO Defendants argue that the prosecution was clearly dismissed based on a compromise or settlement and thus was not terminated in Plaintiff's favor. Plaintiff, on the other hand, contends that the case was not disposed of based on a compromise or settlement because Judge Shattuck's Agreed Order only dealt with the Tennessee fugitive warrant and not the underlying charge in Texas. The Court concludes that for all intents and purposes the case was dismissed based

15

on the settlement agreed to by the parties. That is, in exchange for dropping the charges and returning her property, Plaintiff would finish producing and send the photographs to WCSO. This disposition, "reflecting on neither innocence of nor responsibility for the alleged misconduct," was not a termination in favor of Plaintiff. The Court also notes that the order dismissing the underlying case in Wichita County does not speak to the merits of the allegations, but was instead clearly a result of the WCSO's agreeing to dismiss the case as part of the parties' agreement. Accordingly, the Court will **GRANT** summary judgment to the WCSO Defendants on the malicious prosecution claim.

### 2. Abuse of Process

Count Eleven alleges state law claims for abuse of process, false arrest, and false imprisonment. Despite the WCSO Defendants' motion to for summary judgment on each of these claims, Plaintiff only contested abuse of process. Accordingly, the Court will **GRANT** summary judgment on the state law claims for false arrest and false imprisonment. The federal Fourth Amendment claim against Boyd for arrest without probable cause still stands, however.

"To establish an abuse of process claim, a plaintiff must show '(1) the existence of an ulterior motive; and (2) an act in the use of process other than such as would be proper in the regular prosecution of the charge.'" *In re McKenzie*, 476 B.R. 515, 534-35 (E.D. Tenn. 2012) (quoting *Priest v. Union Agency*, 125 S.W.2d 142, 143 (1939)). "The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club." *Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A.,* 986 S.W.2d 550, 555 (Tenn. 1999) (internal quotations omitted). Abuse of process does not occur unless the "process is perverted, i.e., directed outside of its lawful course to the accomplishment of some object other than

16

that for which it is provided." *Id.* (quoting *Priest*, 125 S.W.2d at 144).

The WCSO Defendants' argument for summary judgment on the abuse of process claim is based on an assertion of probable cause. If there was probable cause, they contend, it was proper for them to demand the photographs be delivered in exchange for dropping the charge and returning her equipment. But as the Court explained above, Plaintiff has shown a question of fact, sufficient to defeat qualified immunity, relating to whether there was probable cause for her arrest. Once the defendants set the questionable criminal case in motion, an additional question of fact arises regarding whether the legal process was perverted in order to coerce Plaintiff into quickly sending the finished photographs to WCSO. That is, there is a jury question regarding whether Duke and Boyd, with the ulterior motive of receiving the photographs, refused to dismiss the charge and return Plaintiff's valuable equipment until she produced the photographs.

The Court notes that whether the WCSO Defendants (and WCSO personnel) were ultimately entitled to receive the photographs is not the question before the court. Rather, the relevant question is whether there was probable cause to believe Plaintiff had committed the crime of theft, which under Texas law would require showing she never intended to produce anything at the time she received money for the job. If the facts are as Plaintiff alleges, a civil suit would have been the proper recourse, not a criminal investigation and prosecution. And the facts are for the jury to decide. Accordingly, the Court will **DENY** summary judgment on the abuse of process claim against Duke and Boyd.

### 3. Remaining State Law Claims

The WCSO Defendants also move for summary judgment on Plaintiff's claims for intentional infliction of emotional distress, tortious interference with a business relationship, conversion, and

17

violation of the implied covenant of good faith and fair dealing. Because Plaintiff's summary judgment response brief fails to address any of these claims, the Court considers them abandoned and will **GRANT** summary judgment on them. See *Brown*, 545 F. App'x at 372.

IV.   CONCLUSION

For the foregoing reasons, the Court will **GRANT** Defendants Nasar Zenelovic's and the Rochester Police Department's motion for summary judgment (Court File No. 106) and will **GRANT IN PART** and **DENY IN PART** the summary judgment motion of Defendants Wichita County, Texas Sheriff's Office, David Duke, and Alan Boyd (Court File No. 104). As explained in this memorandum, the only remaining claims in this case will be (1) the Section 1983 claim against Boyd, in his individual capacity, for arrest without probable cause, and (2) the state law claims against Boyd and Duke, in their individual capacities, for abuse of process.

**An order shall enter.**

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**